## J. W. BRINKLEY *v.* STATE.*

### (*Nashville.* December Term, 1911.)

1. **CONSTITUTIONAL LAW. Power and duty of courts to declare legislative acts void for imposing excessive bail, excessive fines, and cruel and unusual punishments.**

   While our supreme court has never declared an act of the legislature to be void under our constitutional provision (art. 1, sec. 16) forbidding excessive bail, excessive fines, and cruel and unusual punishments, still it is the clear weight of modern authority that the courts have such power, and, in a proper case, it is their duty, to declare legislative acts void under said constitutional provision. (*Post, pp.* 382, 383.)

   Constitution cited and construed:  Art. 1, sec. 16.

   Cases cited and approved:  State v. Lasater, 9 Bax., 587; Parks v. Railroad, 13 Lea, 8; Loeb v. Jennings, 133 Ga., 796.    .

2. **SAME. Statute making federal license prima facie evidence of sales of intoxicating liquors is not unconstitutional as imposing excessive fines, and cruel and unusual punishments.**

   The statute (Acts 1903, ch. 355) providing that the defendant's payment of the internal revenue special tax as a retail liquor dealer, or his possession of an internal revenue tax stamp as a retail liquor dealer, shall, during the time covered by such payment or stamp, be *prima facie* evidence of sales of intoxicating liquors within the meaning of the law prohibiting the sale of intoxicating liquors within four miles of a schoolhouse, is not unconstitutional as contrary to the constitutional provision (art. 1, sec. 16) forbidding excessive fines, and cruel and unusual

---

*Power of legislature to enact *prima facie* rules of evidence for criminal cases, see note in 2 L. R. A. (N. S.), 1007.

As to statute making possession of liquor *prima facie* evidence of intent to violate law against illegal sale, see note in 1 L. R. A. (N. S.), 626.

punishments, because the punishment for a single offense under the statute is not excessive, or cruel and unusual, and is not claimed to be so, and while a person may be indicted, fined, and punished for each day that he is in the possession of the revenue tax stamp, this results from his own voluntary act in being in possession of the tax stamp contrary to the laws of the State; for a person, in taking out such federal license, is not seeking to redress any wrong done him in his person or property, nor is it in furtherance of his right to pursue an occupation guaranteed to him under the law, and the license can be surrendered at any time and the penalties of the law avoided. (*Post, pp.* 378-384.)

Acts cited and construed: Acts 1903, ch. 355.

Constitution cited and construed: Art. 1, sec. 16.

3. **SAME. Same. Statute making federal license prima facie evidence of sales of intoxicating liquors is not unconstitutional as vicious class legislation in excepting druggists and manufacturers of liquor.**

The statute (Acts 1903, ch. 355), whose provisions are substantially stated in the preceding headnote, is not unconstitutional as vicious class legislation, because of its proviso excepting from its provisions those having such revenue license for the use of manufacturers, druggists or others in manufacturing or compounding, or otherwise than for use in sale at retail under State laws, since it is not unlawful for druggists to sell intoxicating liquors for other than beverage purposes, or to compound medicines with intoxicating liquors, and, at the date of the passage of said statute, it was not unlawful to manufacture intoxicating liquors. Instead of vitiating the act, the exception saves it. (*Post, pp.* 378, 384.)

Acts cited and construed: Acts 1903, ch. 355.

Constitution construed but not cited: Art. 11, sec. 8.

Cases cited and approved: Kelly v. State, 123 Tenn., 544; Lindsley v. Gas Co., 220 U. S., 78.

Brinkley v. State.

4. **SAME.** Legislative power to prescribe rules of evidence; statute making possession of federal license prima facie evidence of unlawful sale of intoxicating liquors is not unconstitutional for that reason.

The statute (Acts 1903, ch. 355), whose provisions are substantially stated in the second headnote, is not unconstitutional in making the payment for and possession of a federal internal revenue license *prima facie* evidence of the violation of the statute prohibiting the sale of intoxicating liquors within four miles of a schoolhouse, during the time covered by such license; for legislation prescribing such rules of evidence is within the power of the legislature, since there is a direct and open connection between the voluntary possession of such license and the fact of such violation, and the statute gives the party charged a fair opportunity to make his defense, and to submit all of his evidence to the court and jury to be weighed by them upon all the evidence within his control and properly submitted. (*Post*, *pp.* 384-386.)

Acts cited and construed:    Acts 1903, ch. 355.

Cases cited and approved:    Horne v. Railroad, 1 Cold., 72; Diamond v. State, 123 Tenn., 348; Adams v. New York, 192 U. S., 585; Railroad v. Turnipseed, 219 U. S., 42; Meadowcroft v. People, 163 Ill., 56; Commissioners v. Merchant, 103 N. Y., 143; People v. Cannon, 139 N. Y., 32; State v. Thomas, 144 Ala., 77.

5. **INTOXICATING LIQUORS.** Internal revenue license is competent evidence for the period covered by its duration as determined from the amount paid and the date it became effective.

In a prosecution for the unlawful sale of intoxicating liquors as a beverage within four miles of a schoolhouse where school is kept, charged to have been made on the 20th day of October, 1910, a certificate of the collector of internal revenue for the federal government that the accused had paid the internal reve-

nue special tax as a retail liquor dealer, that his license was in effect from September 10, 1910, and that he paid a certain sum which under the law would indisputably extend the time for which he paid beyond October 20, 1910, the date laid in the indictment, was competent and admissible in evidence, although the certificate did not expressly show the duration of the period covered by the license. (*Post, pp*. 386, 387.)

Acts cited and construed:   Acts 1909, ch. 384.

6. **SAME.   Internal revenue license for retail sale of malt liquor is prima facie evidence of unlawful sales of malt intoxicating liquors only; accurate charge of court so stating; liquors— spirituous, vinous, and malt.**

In a prosecution for the unlawful sale of intoxicating liquors as a beverage within four miles of a schoolhouse where school is kept, the trial judge's charge, stating that the payment by defendant of the internal revenue special tax for license as a retail liquor dealer was *prima facie* evidence of sales of intoxicating liquors in violation of the said four mile law, during the time covered by such license, defining the terms "liquor," "spirituous liquor," "vinous liquor," and "malt liquor," stating that an internal revenue license for the sale of malt liquors was *prima facie* evidence only of the unlawful sales of malt intoxicating liquors, during the time he possessed such federal license, but not *prima facie* evidence of the unlawful sales of spirituous or vinous intoxicating liquors; but that the presumption arising from the possession of such license might be rebutted, and instructing the jury to find the accused guilty, if they believed from the evidence beyond a reasonable doubt that he had retailed or sold malt intoxicating liquors as charged in the indictment, and to find him not guilty if there was a reasonable doubt in their minds as to the guilt of the accused, was *held* to be a plain, clear, and accurate statement of the meaning of the statute (Acts 1903, ch. 355), making the payment of an internal revenue tax *prima facie* evidence of the unlawful sale of intoxicating liquors in violation of the four mile law, as applied to the facts in the case. (*Post, pp*. 380, 381, 387.)

Brinkley v. State.

7. SAME.   Burden is cast upon accused by payment of internal revenue tax and by conviction to show his innocence is not removed by showing absence of sales of intoxicants, when.

In a prosecution for the unlawful sale of intoxicating liquors as a beverage within four miles of a schoolhouse where school is kept, the testimony of five or six witnesses that they had patronized the accused, and had never purchased intoxicants from him; the fact that no intoxicating liquors were in his possession when his place of business was closed under a distress warrant; and the fact that he was in possession of nonintoxicating beverages, do not, on appeal by the accused from a verdict and judgment of conviction, rebut the presumption of guilt arising from his payment of the federal internal revenue tax as a retail liquor dealer, in the absence of the testimony of the accused himself or of any one who was in charge of the business for him, since the verdict and judgment of conviction and the statute (Acts 1903, ch. 355), making the payment of such tax *prima facie* evidence of a violation of the four mile law, both cast upon the accused the burden of showing his innocence.   (*Post, p.* 388.)

Acts cited and construed:   Acts 1903, ch. 355.

8. CRIMINAL LAW.   Burden is upon the accused to show his innocence in the supreme court.

The inquiry in the supreme court is not whether the accused is guilty, but whether he is innocent; for the burden of showing his innocence is cast upon him by the verdict of guilty, approved by the trial judge.   (*Post, p.* 388.)

9. SAME.   Former acquittal cannot be pleaded in bar of subsequent prosecution for a similar offense on a subsequent date where conviction is sought upon ground of possession of federal license to sell liquors, when.

In a prosecution for the unlawful sale of intoxicating liquors as a beverage within four miles of a schoolhouse where school is kept, made by a person who had paid the federal internal revenue tax as a retail liquor dealer, a former acquittal of a similar offense charged to have been committed on a different day,

given because the State offered no evidence to show that the place of business of the accused was within four miles of a schoolhouse, and pleaded as a defense in bar of the prosecution, was properly overruled by the trial judge, since, under the statute (Acts 1903, ch. 355), making the payment of such special tax *prima facie* evidence of the violation of the said four mile law, the accused is presumed to be guilty, and may be convicted, of a separate offense for each day of the time covered by the payment of such special tax. (*Post, pp.* 388, 389.)

FROM WARREN.

Appeal from the Circuit Court of Warren County.—
EWIN L. DAVIS, Judge.

JNO. L. WILLIS, for Brinkley.

ATTORNEY-GENERAL CATES, for State.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The plaintiff in error was indicted in the circuit court of Warren county at its May term, 1911, for the unlawful sale of intoxicating liquors as a beverage within four miles of a schoolhouse where school is kept. The defendant filed a plea of former acquittal, and, upon the determination of the issues raised by this plea against him by the trial judge without the intervention of a jury, he entered his plea of not guilty. A trial was had by the

court and jury, which resulted in a verdict of guilty, and a judgment of fine and imprisonment, from which he has appealed and assigned errors.  On the trial before the jury, the State offered in evidence a  copy  of  the record in the office of the internal revenue collector of the United States for the district of Tennessee, showing that the plaintiff in error had paid the internal revenue special tax as a retail malt liquor dealer on Main street, McMinnville, Tennessee, from September 1, 1910, to June 30, 1911.  This record, together with proof that the place of business of the plaintiff in error was within four miles of a schoolhouse where school is kept, is all the proof that was offered in behalf of the State.  Plaintiff in error did not testify in his own behalf, but introduced the county court clerk, who testified that he issued a dis- tress warrant against the plaintiff in error, which was placed in the hands of the sheriff, and the plaintiff in error's place of business was closed by the sheriff on Saturday, November 5, 1910, and the sheriff locked up the house, and on the following Monday, November 7th, the witness and others invoiced the stock of goods of the plaintiff in error found in his place of business. There was a stock of beerette, coca-cola, soda fount, ice box, glasses, counter or bar, whch looked like an old saloon bar, a mirror, two pool tables, and a screen in front of the door.  The counter was up towards the front door, and the poolroom in the rear of the house.  No in- toxicating liquors were found.  Two or three empty whisky bottles were found upstairs in plaintiff in error's house, where there was a bed.  The beerette looked and

tasted like beer, according to the evidenc of plaintiff in error's witnesses; but there is no proof that it was intoxicating.

Chapter 355, acts of 1903, provides in the first section thereof as follows:

"That in all prosecutions for a violation of the law prohibiting the sale of intoxicating liquors within four miles of a school house, commonly known as the "four mile law," the fact that defendant has paid the internal revenue special tax, as a retail liquor dealer or is in possession of an internal revenue tax stamp as a retail liquor dealer, shall be *prima facie* evidence of sales of intoxicating liquors within the meaning of the four mile law, during the time for which he has paid the internal revenue special tax, or that is covered by the internal revenue special tax stamp possessed by him: Provided, revenue license in this act shall not be construed to mean license for use of manufacturers and druggists or others in manufacturing or compounding or otherwise than for use in sale at retail under State law."

Chapter 384 of the Acts of 1909 provides in the first section thereof as follows:

"That in all prosecutions for violation of the laws of this State prohibiting the sale of intoxicating liquors, copies of the records in the office of the internal revenue collector of the United States for the district of Tennessee, showing that the defendant has paid the internal revenue special tax as a liquor dealer, or showing the issuance to the defendant of an internal revenue special tax stamp, shall be admitted as competent evi-

dence, when such copies are certified to be full, true and complete by the district internal revenue collector."

Copy of the record from the office of the internal revenue collector, introduced by the State and relied upon as making a *prima facie* case of guilt, is as follows:

"Name, Brinkley, J. W. Business, retail malt liquor dealer. Place, McMinnville, Tenn., Main street. From what time, September 1—10. Amount of tax, $16.67. Date of payment or issue of certificate, Sept. 30—10. Serial number of stamp, 12504."

"I, W. A. Dunlap, collector of internal revenue for the district of Tennessee, hereby certify that the foregoing is a full, true, and complete copy of entries on record 10 in my office, showing the payment by special tax payers in Warren county of special tax of liquor dealers for the period from July, 1910, to June 30, 1911.

"Witness my hand and seal of office, at office in the city of Nashville, Tennessee, this 5th day of August, 1911.

"W. A. DUNLAP,
"Collector of Internal Revenue, Dist. of Tenn.,
"By E. S. Priest, Chief Clerk."

The learned trial judge gave the following instructions to the jury:

"The State has introduced and read to you a certified transcript of the record of the issuance of federal liquor license or tax stamp in Warren county, Tenn., and I instruct you that this transcript is competent evidence, and that it shows that the defendant on September 30, 1910, paid $16.67 for, and received, a certificate from

the United States government authorizing him to engage in the business of a retail malt liquor dealer on Main street, in McMinnville, Tenn., from September 1, 1910, to June 30, 1911.

"I further instruct you, in the language of the statute, chapter 355 of the Acts of 1903, that in all prosecutions for a violation of the law prohibiting the sale of intoxicating liquors within four miles of a schoolhouse, commonly known as the four mile law, the fact that defendant has paid the internal revenue special tax as a retail liquor dealer, or is in possession of an internal revenue tax stamp as a retail liquor dealer, shall be *prima facie* evidence of sales of intoxicating liquor within the meaning of the four mile law, during the time for which he has paid the internal revenue special tax, or that is covered by the internal revenue special tax stamp possessed by him.

"I further instruct you that the term 'liquor,' used in said statute, is a general term, comprehending and including the different kinds of intoxicating liquors, which are classed and designated as spirituous, vinous, and malt intoxicating liquors, as charged in the indictment in this cause. What is meant by 'spirituous liquors' is distilled liquor, such as whisky and brandy; what is meant by 'vinous liquors' is liquor made from the grape, etc., such as wine; and what is meant by 'malt liquors' is liquor made from malt, such as beer, malt, etc.

"Consequently you are instructed that the federal internal revenue special tax stamp shown to have been is-

sued to defendant merely authorized him to sell malt liquor; and, while the possession of such a license is *prima facie* evidence of sales of malt intoxicating liquors during the time he possessed such federal license, yet it is not *prima facie* evidence of sales of spirituous or vinous liquors, or that he exercised the privilege of a dealer in spirituous or vinous intoxicating liquors.

"However, you are instructed that such presumption arising from the possession of federal license or internal revenue special tax stamp may be rebutted by such proof as satisfies you that the defendant did not make any sales of malt intoxicating liquor on the date charged in the indictment, or by such proof as raises in your minds a reasonable doubt as to whether he made such sales on the date stated.

"Applying the law to the facts in this case, you are instructed that if you find from the proof, and believe beyond a reasonable doubt, that the defendant retailed or sold malt intoxicating liquors on the date charged in the indictment, and in Warren county, Tenn., and within four miles of a schoolhouse where a school was kept, then he would be guilty as charged, and you should so find.

"On the other hand, if there is a reasonable doubt in your minds as to defendant's guilt as charged, you should acquit him."

The assignments in the court, which will be considered in this opinion, are that chapter 355, Acts of 1903, is unconstitutional, because it violated section 16 of article 1 of the constitution of this State, forbidding

excessive bail, excessive fines, and cruel or unusual punishments. For this reason, it is said that a person may be convicted and imprisoned for life by such evidence for a series of small misdemeanors, providing for a jail sentence of six months, if he should have such license issued to him for six months or more, because an indictment would lie, and a conviction could be had, upon the evidence of the license for each day during the period the license had to run, and also because the legislature has no power by legislative act to declare the possession of such a license to be *prima facie* evidence of guilt, as this would, in effect, be declaring a thing to be that which in truth and in fact it is not.

It is also said this legislation is unconstitutional as class legislation, because it excepts from its provisions druggists and others who handle it and manufacturers who make intoxicating liquors.

1. This court has never declared void an act of the legislature under the sixteenth section of the Bill of Rights, forbidding excessive bail, excessive fines, and cruel and unusual punishments, in any reported case known to us. In *State* v. *Lasater,* 9 Baxt., 587, the power of the court to do so in any case was doubted, but not determined. In *Parks* v. *Railroad Co.,* 13 Lea, 8, 49 Am. Rep., 655, the power of the court to declare such a statute void was assumed in the opinion of Cooper, J., but not decided. However, we think that the profession generally understands, and the clear weight of modern authority is, that the courts have such power under section 16 of the Bill of Rights, and in a proper case presenting the question,

it would be their undoubted duty to do so. *Loeb* v. *Jennings*, 133 Ga., 796, 67 S. E., 101; 18 Am. & Eng. Ann. Cas., 376. Still, under all of the authorities, it cannot be doubted that the act assailed in this case does not fall within the prohibition of this section of the constitution.

Plaintiff in error, in taking out the federal license authorizing him to retail malt liquor, was not seeking to redress any wrong done him in his person or property, nor was it in furtherance of his right to pursue an occupation guaranteed him under the law. The license was taken with full knowledge upon his part that the act of paying the fees, or being possession of the stamp, would raise a presumption sufficient to support a conviction of crime under the laws of this State. While the license would protect him against the federal government in the pursuit of the occupation authorized by it under the laws of that government, it at the same time brought him into direct conflict with the laws of this State, and created a presumption that he was violating the law against the sale of intoxicants. The mere fact that he might be indicted, fined, and punished for each day that he was in possession of the license does not make the fines excessive, or the punishment cruel and unusual. The conditions which produce the fines and punishments are created by his act alone. A fine and imprisonment for a single offense under this statute is not claimed to be excessive, or cruel and unusual. Whether there should be other fines and imprisonments is wholly within the power of plaintiff in error. Therefore, if the con-

tinued violation of this law should result in excessive
fines and cruel and unusual punishments, it is not the
act of the government, but is the voluntary act of plain-
tiff in error. ' The license could be surrendered at any
time and the penalties of the law avoided.

2.   This act is not vicious class legislation, because of
the exception in favor of druggists and others who
handle intoxicating liquors and manufacturers who
make them.   It is not unlawful for druggists to sell for
other than beverage purposes, or to compound medicines
with intoxicating liquors, and, at the date of the pas-
sage of this act, it was not unlawful for manufacturers
to make them.   Instead of vitiating the act, the excep-
tion saves it.   The legislature could not have made the
possession of a license from the federal government
*prima facie* evidence of guilt, when the thing authorized
by the federal government was likewise authorized by
the State government.   There was no law to violate, and
no crime to commit, by druggists and manufacturers,
by the mere fact of handling and compounding by the
one and manufacturing intoxicating liquors by the other.
*Kelly* v. *State,* 123 Tenn., 544, 132 S. W., 193; *Lindsley*
v. *National Carbonic Gas Co.,* 220 U. S., 78, 31 Sup. Ct.,
337, 55 L. Ed., 377, and authorities there cited.

3.   It is not beyond the power of the legislature to de-
clare the possession of federal internal revenue license
by one engaged in business within four miles of a school-
house where school is kept *prima facie* evidence of guilt
under an indictment for violating the four-mile law.   A
similar statute was held valid by this court in *Diamond*

v. *State,* 123 Tenn., 348, 131 S. W., 666. The general power of the legislature to prescribe rules of evidence and methods of proof can no longer be doubted under modern authority. That this power has its constitutional limitations was stated in *Diamond* v. *State,* supra. Such a law, having for its effect a denial of the party charged of the right to rebut and overcome the presumption created by it, would be void. So would a law which made an act *prima facie* evidence of crime over which the party charged had no control, and with which he had no connection; or which made an act *prima facie* evidence of crime which had no relation to a criminal act, and no tendency of itself to prove the ultimate fact of guilt. But so long as such a law leaves the party charged fair opportunity to make his defense, and to submit all the facts to the court and jury, to be weighed by them upon all evidence within his control legitimately bearing upon them, and so long as the fact from which guilt is to be inferred has a direct and open connection with the ultimate fact of guilt, it is not violative of any constitutional right of the accused. *Meadowcroft* v. *People,* 163 Ill., 56, 45 N. E., 991, 35 L. R. A., 176, 54 Am. St. Rep., 447; *Auburn Excise Com'rs* v. *Merchant,* 103 N. Y., 143, 8 N. E., 484, 57 A. M. Rep., 705; *People* v. *Cannon,* 139 N. Y., 32, 34 N. E., 759, 36 Am. St. Rep., 668; *Adams* v. *N. Y.,* 192 U. S., 585, 24 Sup. Ct., 372, 48 L. Ed., 575; *Horne* v. *Memphis & O. R. Co.,* 1 Cold., 72; *State* v. *Thomas,* 144 Ala., 77, 40 South., 271, 2 L. R. A. (N. S.), 1011, 113 Am. St. Rep., 17, 6 Am. & Eng. Ann. Cas., 744; *M., J. & K. C. R. Co.* v. *Tur-*

*nipsced,* 219 U. S., 42, 31 Sup. Ct., 137, 55 L. Ed., 80, 32 L. R. A. (N. S.), 226.

In the last case cited, Mr. Justice Lurton, speaking for the court, stated the rule thus:

"The law of evidence is full of presumptions either of fact or law. The former are, of course, disputable, and the strength of any inference of one fact from proof of another depends upon the generality of the experience upon which it is founded. . . .

"Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, national and State, dealing with such methods of proof in both civil and criminal cases, abound, and the decisions upholding them are numerous."

There is a direct and open connection between the possession of a federal license authorizing the retail sale of intoxicating liquors and the ultimate fact of such sale. The interests of men are such, and experience teaches, that they do not ordinarily incur the expense and trouble of procuring license to engage in the sale of intoxicants, unless they intend to do so. Apart from the statute making the possession of such license *prima facie* evidence of the fact of a sale, the inference might well be drawn, in the absence of all rebutting proof, that one who pays the fees and possesses himself of such license is engaged in the sale of intoxicants.

4. The sale laid in the presentment is of date October 20, 1910. It was objected at the trial below that the

certificate of the collector of internal revenue could not be considered as part of the record authorized by chapter 384, Acts of 1909, as evidence that plaintiff in error had paid the internal revenue special tax as a liquor dealer, and that the copy of the record to which the certificate is attached fails to show that the tax had been paid for the time covering the date alleged in the presentment. This exception is immaterial. The record produced, to which there is no exception, shows that the beginning of plaintiff in error's license was September 10, 1910, and the amount paid was $16.67, which, under the law, would indisputably extend the time beyond October 20th, the date laid in the indictment. In addition, the trial judge charged the jury, without exception, that the transcript of the record showing the issuance of the federal liquor license, or tax stamp, to plaintiff in error "shows that the defendant on September 10, 1910, paid $16.67 for, and received, a certificate from the United States government, authorizing him to engage in the business of a retail malt liquor dealer," etc., and there is no assignment of error to this part of the charge in this court. But, as stated, we think the trial judge correctly construed the meaning of the record.

5. We have fully set out in this opinion the charge of the learned circuit judge construing chapter 355, Acts of 1903, because it is a plain, clear, accurate statement of the meaning of that statute as applied to the facts of this case. The meaning of the statute is so obvious, and is so clearly stated in the charge of his honor, that nothing can be added to strengthen it.

6. It is earnestly insisted that the evidence stated in this opinion rebuts the *prima facie* case made against the plaintiff in error by the introduction of the record showing the payment of the stamp tax to the federal government. All of the testimony offered by plaintiff in error amounts to nothing more than a failure to show that a sale was made. The fact that five or six witnesses say that they have patronized him, and never purchased intoxicants from him; the fact that he had no intoxicating liquors in stock at the time his house was closed under the distress warrant; the fact that he was in possession of nonintoxicating beverages—all of these facts do not prove, and can hardly be said to tend to prove, that he had not sold intoxicating liquors within four miles of a schoolhouse. The inquiry in this court is not whether he is guilty, but whether he is innocent. The burden of showing this is cast upon him, not only by the verdict of the jury, approved by the circuit judge, but also by the statute which expressly makes the possession of the retail liquor dealer's license, or the payment of the stamp tax, *prima facie* evidence of guilt. It is not even shown that plaintiff in error is a man of good character, and therefore his character cannot be a witness for him to rebut the case made by the State. He does not testify himself, nor does any one testify who had charge of the business and conducted all of the sales made by and for him.

7. It appears that plaintiff in error was indicted prior to the return of the presentment in this case for the same offense, and that, upon the trial before the circuit judge without the intervention of a jury, the State

Brinkley v. State.

offered as evidence the record hereinbefore set out, without producing any evidence that plaintiff in error's place of business was within four miles of a schoolhouse. The circuit judge acquitted the defendant upon the ground that it was not shown that his place of business was within four miles of a schoolhouse. This judgment was pleaded in this case in bar of this prosecution. The trial judge overruled the plea, and in this he was correct. As insisted by counsel for plaintiff in error under another assignment, he is guilty of an offense for every day of the time covered by the payment of the special stamp tax; and each day that he claims the privilege granted and the immunities guaranteed by the payment of this tax is *prima facie* evidence of a separate offense. The first presentment charged that the defendant was guilty of violating the four-mile law on the ———— day of September, 1910, and the presentment in the case in hand charged that he was guilty of the same offense on the 20th day of October, 1910. This is a continuing offense, and the determination that he was not guilty on one day is not a bar to a prosecution for the same offense alleged to have been committed upon another and different day. This is conceded by counsel, in effect, when it is urged here that the act of 1903 violates section 16 of the Bill of Rights, because plaintiff in error may be convicted of an offense for every day covered by the period of time for which he paid the special stamp tax. A mere statement of the proposition is its own answer.

There is no error in the record, and the case is affirmed.