Mrs. A. Elmore *v.* State.
(two cases).

(*Jackson.*   April Term, 1916.)

1. INTOXICATING LIQUORS.   Evidence.   Internal revenue license. Statute.

Acts 1903, chapter 355, making the payment of an internal revenue special tax as a retail liquor dealer *prima facie* evidence of sales within the law prohibiting sales of liquor within four miles of a schoolhouse, and Acts 1909, chapter 384, providing that in all prosecutions for violations of the law against the sale of intoxicating liquors copies of the records in the office of the internal revenue collector, showing defendant's payment of an internal revenue special tax as a liquor dealer, or the issuance of an internal revenue special tax stamp, when certified by the revenue collector, shall be competent evidence, are drastic and in derogation of the common-law rights of the citizen, and must not be too liberally construed against the citizen. (*Post, pp.* 349, 350.)

Acts cited and construed: Acts 1913, ch. 355; Acts 1909, ch. 384.

Case cited and approved: Brinkley v. State, 125 Tenn., 371.

2. CRIMINAL LAW.   Reception of evidence.   Identity of accused.   Liquor license.

In a prosecution for selling liquor within four miles of a schoolhouse, evidence *held* not to sufficiently identify the accused with one Mae Elmore to permit the introduction in evidence of a federal liquor license to one Mrs. Mae Elmore to engage in the business of retail liquor dealer. (*Post, pp.* 349, 350.)

3. INTOXICATING LIQUORS.   Offense.   Issues and proof.   Schoolhouse.

In a prosecution for selling liquor within four miles of a schoolhouse, the existence of a schoolhouse, where school is ordinarily kept, within four miles of defendant's place of business, is a

fact which must be averred in the indictment and proven on the trial, notwithstanding Acts 1909, chapter 1, which extended the four-mile law to the whole state. (*Post, pp.* 350-352.)

Cases cited and approved: Kelly v. State, 123 Tenn., 516; Motlow v. State, 125 Tenn., 560.

---

FROM SHELBY

---

Error to the Criminal Court of Shelby County.— Thos. W. Harsh, Judge.

D. B. Sweeney, for plaintiff in error.

Wm. H. Swiggart, Assistant Attorney-General, for the State.

Mr. Swiggart, Special Judge, delivered the opinion of the Court.

This is an appeal in the nature of a writ of error, in two cases, from the judgments of the criminal court of Shelby county, wherein the plaintiff in error, Mrs. A. Elmore, hereinafter called the defendant, was fined $50 and committed to the workhouse for three months, in both cases for selling liquor within four miles of a schoolhouse.

The principal errors assigned for a reversal are: (1) That there is no proof that the alleged sales were made within four miles of any schoolhouse; (2) that

the court was in error in permitting the State to put in evidence against her, over her objection, a certified copy of the internal revenue license, issued to one Mrs. Mae Elmore, 320 High street, Memphis, Tenn. This federal license to engage in the business of a retail liquor dealer was issued on October 19, 1915, and covers the period from July 1, 1915, to June 30, 1916, and was issued in the name of Mrs. Mae Elmore.

Defendant insists that the State failed to connect her with this federal liquor license in any manner, or to show that it was issued to her, or that she ever lived at 320 High street in Memphis, or that her name is Mae Elmore, or that she was ever known by that name and, therefore, that this document was incompetent as against her. It was shown that defendant once lived on High street, but not that she lived at 320 High street. She is shown to have left that community, in the summer of 1915, because the police were "hot after her." But when the present cases were begun she was running a grocery store about six miles out in the country from the city, at a place called "South Speedway and Horn Lake Road." There is no proof showing that she was the same person as Mrs. Mae Elmore, although the proof creates a strong suspicion that she may be the same person. Still the court thinks that her identity with Mae Elmore is not sufficiently proven to warrant the introduction as evidence of this federal liquor license against her, and that the trial court committed error in permitting the State to introduce this document against her. The act

of the legislature making such a liquor license competent evidence, and also *prima facie* evidence, of guilt is a drastic statute, and is in derogation of the common-law rights of the citizen. See Acts 1903, chapter 355; Acts 1909, chapter 384; *Brinkley* v. *State,* 125 Tenn., 371–388, 143 S. W., 1120. While these statutes are in keeping with sound public policy, now generally acquiesced in, still they must not be too liberally construed against the citizen. Before a conviction should be allowed to stand, where it is based upon the presumption of guilt under these acts, it ought to be clearly shown that the defendant took out the federal license, or had some guilty connection therewith.

Again, the second assignment of error, to the effect that the State failed to prove that there was a schoolhouse, where school is ordinarily kept, within four miles of the place of business of defendant, or the place where it is claimed by the State that the liquor was sold, is well made and must be sustained. The bill of exceptions does not show any such proof, or that the State in any way offered to make such proof, of the existence of the schoolhouse.

We think that this is an essential fact to be averred in the indictment or presentment, and that it must be proven on the trial. The existence of a schoolhouse within four miles of the place where the sale of liquor was made is of the essence of the offense, and without such proof, there can be no conviction under a presentment or indictment charging the sale of liquor within four miles of a schoolhouse. The assistant

attorney-general submits to the court, in a plausible
argument found in his brief, that now, since the pass-
age of Acts 1909, chapter 1, extending the four-mile
law to the whole State, in effect, that actual proof of
the existence of schoolhouse within four miles of the
place of sale is rendered unnecessary, and that the
court and jurors may take judicial knowledge of the
fact that there is no place within the State where such
sales could be made without being within four miles
of a schoolhouse.   He refers the court to the language
of this court in *Kelly* v. *State,* 123 Tenn., 516, 533, 132
S. W., 193, and the case of *Motlow* v. *State,* 125 Tenn.,
560, 561, 145 S. W., 177.   It is true this court did use
language in those cases indicating that the whole
State was practically covered by this four-mile statute,
which is probably true; but the court was speaking
historically about the effect of this act of 1909, and
did not intend to say that such proof was rendered
unnecessary, or could be dispensed with, on the trial
of these four-mile cases.   The indictments in the pres-
ent cases do not charge the sale of liquor without
license, but specifically that the sales were made within
four miles of a schoolhouse.   Before there can be a
conviction under such an indictment, the State must
prove, not only that there was a sale of intoxicating
liquors, but that it was made within four miles of a
schoolhouse, where a school is ordinarily kept, in the
State.   Without such proof, the chief element of the
offense charged would be lacking.   There should not

Elmore v. State.

be, in the very nature of the cases, any difficulty in making such proof, if in fact there was a schoolhouse located within four miles of the place in question. For these reasons, the verdicts and judgments in these cases will be set aside, and new trials granted.