**KANSAS CITY, Missouri, Appellant,**

v.

**Albert C. LEE, Respondent.**

**No. 52193.**

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1968.

Motion for Rehearing to Transfer to Court En Banc Denied Dec. 9, 1968.

**482**

————◇————

Herbert C. Hoffman, City Counselor, Richard W. Mason, Jr., Assoc. City Counselor, Kansas City, for appellant.

W. Raymond Hedrick, Lillie Knight, Kansas City, for respondent.

WELBORN, Commissioner.

Albert C. Lee was charged with violation of a Kansas City ordinance, making unlawful possession of a federal wagering stamp with intent to gamble. The Circuit Court of Jackson County found that the defendant did possess such a stamp, but that the ordinance was unconstitutional under the due process clauses of the state and federal constitutions. The city appealed to this court, which found the ordinance constitutional and reversed the circuit court's judgment. Kansas City v. Lee, Mo.Sup., 414 S.W.2d 251 (decided April 10, 1967).

An appeal was taken by the defendant to the United States Supreme Court. On March 4, 1968, the United States Supreme Court vacated the judgment of this court "for further consideration in the light of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 716, 19 L.Ed.2d 889, [decided January 29, 1968]." Lee v. Kansas City, Missouri, 390 U.S. 197, 88 S.Ct. 901, 19 L.Ed.2d 1037.

Marchetti was convicted of conspiring to evade payment of the annual occupational tax on wagers, imposed by 26 U.S.C. § 4411, willful failure to pay such tax, and willful failure to register, as required by 26 U.S.C. § 4412 before engaging in the business of accepting wagers. The Supreme Court held that Marchetti's motion in arrest on the grounds that the statutory requirement to register and pay the tax violated his Fifth Amendment privilege against self-incrimination should have been sustained.

In arriving at this conclusion, Justice Harlan, speaking for the majority of the court, stated (88 S.Ct. 702–703):

"In these circumstances, it can scarcely be denied that the obligations to register and to pay the occupational tax created for petitioner 'real and appreciable,' and not merely 'imaginary and unsubstantial,' hazards of self-incrimination. Reg. v. Boyes, 1 B. & S. 311, 330; Brown v. Walker, 161 U.S. 591, 599–600, 16 S.Ct. 644, 647, 40 L. Ed. 819; Rogers v. United States, 340 U. S. 367, 374, 71 S.Ct. 438, 95 L.Ed. 344. Petitioner was confronted by a comprehensive system of federal and state prohibitions against wagering activities; he was required, on pain of criminal prosecution, to provide information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant 'link in the chain' of evidence tending to establish his guilt.[10] "

A footnote appended to his conclusion observed (88 S.Ct. 703):

" [10] We must note that some States and municipalities have undertaken to punish compliance with the federal wagering tax statutes in an even more direct fashion. Alabama has created a statutory presumption that possessors of federal wagering tax stamps are in violation of state law. Ala.Code, Tit. 14, §§ 302(8)–302(10) (1958). Florida adopted a similar statute, Fla. Stat.Ann. § 849.051 (1963), but it was subsequently declared unconstitutional by the Florida Supreme Court. Jefferson v. Sweat, 76 So.2d 494. The Supreme Court of Tennessee has upheld an ordinance adopted by the City of Chattanooga which

makes possession of a federal tax stamp a misdemeanor. Deitch v. City of Chattanooga, 195 Tenn. 245, 258 S.W.2d 776. See for a similar provision Rev.Ord., Kansas City, Missouri, § 23.110 (1956); and Kansas City v. Lee, (Mo.Sup.,) 414 S.W.2d 251. Georgia has recently provided by statute that the possession or purchase of a federal wagering tax stamp is "prima facie evidence of guilt" of professional gambling. Ga.Code Ann. § 26–6413 (Supp. 1967). See for a similar rule McClary v. State, supra, [211 Tenn. 46, 362 S.W.2d 450].

The opinion further states (88 S.Ct. 709):

"Nonetheless, we can only conclude, under the wagering tax system as presently written, that petitioner properly asserted the privilege against self-incrimination, and that his assertion should have provided a complete defense to this prosecution. This defense should have reached both the substantive counts for failure to register and to pay the occupational tax, and the count for conspiracy to evade payment of the tax. We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. If, in different circumstances, a taxpayer is not confronted by substantial hazards of self-incrimination, or if he is otherwise outside the privilege's protection, nothing we decide today would shield him from the various penalties prescribed by the wagering tax statutes."

On reargument, the city contends that the Marchetti decision does not affect this court's prior opinion. The city's position is that the Supreme Court, in upholding the claim of privilege in Marchetti, recognized that the registration subjected a stamp holder to just such action as the city here undertook. Of course, the opinion in Marchetti did so. However, had the Su-

preme Court been of the view here espoused by the city, there would have been no occasion for vacation of our prior opinion. Affirmance would have been the only proper course.

In vacating our opinion, we feel that the court felt that we should reconsider our view of the validity of the Kansas City ordinance in the light of the essential holding of Marchetti that the registration requirement of the gambling tax act is an improper invasion of the constitutionally protected privilege against self-incrimination.

Essentially Marchetti and Lee were faced with the same dilemma: Either provide information which would subject the "taxpayer" to punishment for violation of state law or refuse to provide such information and be subject to prosecution for violation of the federal law. The prosecution of Lee is based essentially upon an involuntary choice. He knew that he would be in trouble with the "Revenue" without the stamp and in trouble with the police with it. As the law stood at the time (United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754, Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475), he had no reason to believe that a claim of privilege insofar as the federal return was concerned would be effective. He, therefore, made his hobson's choice, and furnished the basis for his prosecution.

Marchetti v. United States, supra, and Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L. Ed.2d 165, establish that legislation designed clearly to make a person engaged in an unlawful activity provide the information upon which his conviction may be based cannot stand. A conviction based upon an uninformed choice, under compulsion, to furnish such information is equally repugnant to the constitutional guaranty. As we noted above, the law, as it stood at the time of Lee's arrest, appeared to afford no way out of the dilemma. Therefore, Lee's choice cannot be considered a

**484**

knowing waiver. Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906.

We, therefore, conclude that the circuit court's dismissal of the information against appellant was, for the reasons here stated, proper. The judgment being proper, we affirm without regard for the reasons assigned by the trial court.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.