**Kenneth Ray WILLIAMS, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Jan. 12, 1977.

Certiorari Denied by Supreme Court
June 27, 1977.

---

*State,* 182 Tenn. 577, 188 S.W.2d 555, 557 (1945).

J. Thomas Caldwell, Ripley, for appellant.

R. A. Ashley, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, Michael Whitaker, Dist. Atty. Gen., Preston Parks, Asst. Dist. Atty. Gen., Somerville, for appellee.

## OPINION

TATUM, Judge.

Appellant was convicted of second degree murder in the Circuit Court of Lauderdale County and his punishment was fixed at 10 years in the State Penitentiary. We must affirm.

A summary of the evidence accredited by the jury supports the following facts: Appellant was the former husband of the deceased, Barbara Thompson, and they had four children. The deceased had remarried to Victor Thompson. The children were visiting in appellant's home at the time of the death of their mother.

On June 18, 1975, the frame dwelling house of Victor and Barbara Thompson completely burned and after the fire, only ashes remained. The fire was discovered at about 5:10 P.M. and was well under way at that time. The fire was of unknown origin. However, kerosene was kept in the house.

The body of Barbara Thompson was found inside the building, where she had been lying upon a bed in her own bedroom. She was burned to the extent that only 55 pounds of her torso remained.

The deceased had worked the day of her death at a point about 25 miles from her home. A real estate salesman talked with her by telephone at 4:10 P.M. that same afternoon and arranged to meet her 15 or 20 minutes later for the purpose of showing her a house. The real estate agent arrived at the house which was to be shown about 4:30 P.M., but the deceased did not appear. He attempted to telephone her at home about 5:00 o'clock P.M. Her telephone rang but no one answered. He attempted to telephone her again about 5:15 P.M. and the telephone did not ring. The fire was discovered at about 5:10 P.M.

Appellant and deceased were divorced on September 24, 1973, and the divorce decree obligated appellant to pay child support. He had failed to pay child support and had been arrested for contempt of court in March of 1975. Mrs. Thompson had, shortly before her death, consulted with an attorney about citing the appellant for contempt of court again.

Appellant was seen on the afternoon of the fire between 1:00 o'clock and 1:15 P.M. at a grocery store near the Thompson home. At that time, he had no scratch marks on his face or neck. He was again seen at the Thompson home while it was burning and at that time, he had fresh scratch marks on his face and neck.

Appellant's automobile was seen parked 400 to 500 yards west of the Thompson home (at about 4:45 P.M., 5:05 P.M. and 5:15 P.M.) the afternoon of Mrs. Thompson's death. Boot prints were discovered the morning after the fire, beginning at the edge of a plowed field at the yard of the Thompson home. They led away from the home for a distance of about 300 yards to a field road which was north of a blacktop road. The field road was west of the Thompson residence and the boot prints

were leading in the general direction in which appellant's automobile had been parked. There was substantial evidence that the boot prints were made by a pair of boots admittedly owned by appellant.

Appellant did not work on the day of the fire. Appellant testified that he worked the night shift on June 17 and slept until approximately 1:00 o'clock P.M. on June 18. He testified that his present wife was trying to awaken him and they began to wrestle and that as she was falling off the bed, she grabbed for him and scratched his face. He cleaned up, then went to the store where he was seen by other people who testified that at that time he did not have a scratched face. He said that he was not feeling well and that he telephoned his employer that he would not work that day. He went to see his doctor but the doctor was not in his office. He returned home at about 3:30 or 4:00 o'clock P.M. and remained there until his mother telephoned his home and he learned that the house was on fire. He took his son and two daughters to the fire at 5:00 o'clock P.M. or a few minutes thereafter. He took his children home from the fire because they were upset and then returned to the fire with another son. He denied that he had been in the area where the boot prints were found and he denied having anything to do with the death of his former wife. He denied that the automobile parked in the area belonged to him.

Appellant's wife corroborated his testimony.

There was evidence at the instance of appellant that deceased and her present husband were having marital difficulties; that he was a man of violence and profited by his wife's death by reason of an insurance policy; and that the deceased had been seeing an unknown male visitor practically every night while her husband was working. In rebuttal, appellant's daughter testified that he did not arrive home on the day of the fire until about twenty minutes after five in the afternoon and that this was only five or ten minutes before they learned of the fire.

The only medical evidence of the cause of death of Mrs. Thompson was the testimony of Dr. J. T. Francisco, a highly qualified forensic pathologist who is Chief Medical Examiner for the State of Tennessee. Dr. Francisco performed an autopsy on the body of the deceased. He testified that from his examination, Mrs. Thompson did not breathe any carbon-contained materials before her death and he concluded that she was dead when the fire started. There was no evidence of heart attack, stroke or other common natural disease. The stomach contained no chemical material, drugs or barbiturates. No alcohol was in the blood. He testified:

"Q. Could you say with any degree of medical certainty that that was the cause of death, Dr. Francisco?

A. Yessir. Well, in this sense. Death was due to pulmonary edema. Now, pulmonary edema is the type findings of the cause of death is a finding that is consistent with smothering, consistent with the exclusion of oxygen from the body, from some cause from which smothering is a cause and which these findings would be present that the person was dead before the fire occurred."

On cross-examination, he testified that fire, at the time of death, was not in such proximity to the body that the body would have been in position when alive to inhale smoke from the fire because there was no smoke present in the lungs.

In his first two assignments of error, appellant assails the sufficiency of the evidence. In an excellent brief and able argument, counsel concedes that the *corpus delicti* can be established by circumstantial evidence but urges that the evidence in this case is insufficient to establish the *corpus delicti*. In considering these assignments, we must bear in mind the following propositions of law: *Corpus delicti* may be established by circumstantial evidence but the burden of proof is upon the State to establish the *corpus delicti* and the criminal agency of the accused beyond a reasonable doubt. *Foster v. State*, 180 Tenn. 164, 172 S.W.2d 1003 (1943). Evi-

dence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise or suspicion, is insufficient. *Fine v. State*, 193 Tenn. 422, 246 S.W.2d 70 (1952). When the State relies upon circumstantial evidence, as in other cases, the facts proven must be consistent with the hypothesis of guilt and must exclude every other reasonable theory or hypothesis except that of guilt. *Smith v. State*, 205 Tenn. 502, 327 S.W.2d 308 (1959). The State must prove to a moral certainty that a criminal offense was committed and that the accused committed the offense. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958). The question of whether or not the State has sufficiently established the *corpus delicti* and the guilt of an accused is primarily a function of the jury. *McClary v. State*, 211 Tenn. 46, 362 S.W.2d 450 (1962). The weight of circumstantial evidence is a question for the jury to determine. The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are also questions primarily for the jury. *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451 (1958).

In applying the law to the facts in this case, we will also bear in mind that the jury verdict of guilty, approved by the Trial Judge, terminates the presumption of innocence of the accused and clothes him in a presumption of guilt in this Court. We are not permitted to reverse a conviction upon the facts unless the evidence clearly preponderates against the verdict of the jury and in favor of the innocence of the accused. We may review the evidence only to determine whether it preponderates against the verdict and the appellant has the burden of showing on appeal that the evidence preponderates against the verdict and in favor of his innocence. *Osborne v. State*, 512 S.W.2d 612 (Tenn.Cr.App.1974); *Sloan v. State*, 491 S.W.2d 858 (Tenn.Cr. App.1972).

The medical proof is that Mrs. Thompson died from pulmonary edema. This is caused by the exclusion of oxygen from the body (smothering). She breathed no smoke before her death. Appellant concedes that there is a possibility that the deceased died by a criminal act but insists that it is equally as likely that the ceiling, attic and upper parts of the house fell on the deceased, smothering her. We think that the jury was justified under the evidence in excluding the latter possibility, and in concluding that she would not voluntarily remain in a burning house until the roof fell upon her unless she was asleep or unconscious. Her remains were found in her bed after the fire, but she had made arrangements with a real estate dealer at 4:10 P.M. to meet him at a house in "fifteen or twenty minutes". It is highly improbable that she would go to bed under the circumstances, fall asleep, and not be awakened by the heat of a fire or smoke before the house burned to the extent that the roof collapsed. She had not been taking drugs or barbiturates or alcohol. The real estate agent telephoned her home at 5:00 o'clock P.M., but received no answer, although the telephone did ring.

In addition, the evidence sufficiently precluded the possibility of illness. She had a history of good health and worked until the day of her death. Dr. Francisco determined that she did not have a heart attack, stroke or other common natural disease. At 4:15 P.M. when the real estate agent telephoned her, she apparently was alert and well and was planning to meet him to look at a house that she and her husband would possibly buy. She obviously intended to leave her home immediately as she was to meet him in "fifteen or twenty minutes". We are aware that certain heart ailments will prevent the intake of oxygen and cause pulmonary edema but this possibility was excluded by the testimony of Dr. Francisco. Moreover, the jury was justified in concluding that if she remained in the house alive until the fire reached the stage that the burning roof collapsed upon her, she would have smoke in her lungs.

We cannot say that there was no evidence of a *corpus delicti* or that the evidence preponderates against the jury finding of a *corpus delicti*.

Appellant further states that if a crime was committed, the evidence of his guilt is insufficient to support a verdict. In considering this proposition, we are bound by the above-mentioned rules of law. Appellant insists that under the evidence, there is no exclusion of other reasonable theories or hypothesis except that of his guilt. He says that it is equally as possible that the deceased's husband, Victor Thompson, or the unknown visitor, committed the crime. There is direct evidence that Victor Thompson did not commit the crime and that he was at work at the time the crime was committed. There is no evidence of the presence of anyone other than the appellant on the premises when the crime was committed. There was considerable circumstantial evidence that appellant was on the premises with the deceased when the crime was committed, that he had a struggle with someone after he had left his home and the store and that he attempted to conceal his presence by leaving through the fields and by parking his car some distance from the house.

As above pointed out, the weight of circumstantial evidence is a question for the jury to determine. The inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. The jury has responded to these questions adversely to appellant. The appellant has failed to show that the evidence preponderates against the verdict and in favor of his innocence.

Appellant's defense of alibi was rejected by the jury. This is a matter that is left to the jury with other facts in the case. *Smith v. State,* 205 Tenn. 502, 327 S.W.2d 308 (1959).

We do not weigh the evidence as a thirteenth juror but are bound by the familiar rules, previously mentioned. We must therefore, overrule Assignments I and II.

Appellant states that the Court erred in disallowing the testimony of Mrs. Sadie Ozment, the mother of the deceased.

The Court sustained the State's objection to her testimony that about one week prior to the death of the deceased, the deceased told the witness that the deceased's present husband (Victor Thompson) had attempted to smother her a time or two with a pillow. The witness would also have testified that the deceased expressed fear of Victor Thompson and stated that he wanted her insurance money. This evidence was properly excluded as mere hearsay. If the witness had observed deceased's husband attempting to smother the deceased, that would not have been incompetent as hearsay, but what the deceased told the witness concerning this alleged episode, is not within any of the exceptions to the hearsay evidence rule. It is not a part of the *res gestae*. See, *Garrison v. State,* 163 Tenn. 108, 40 S.W.2d 1009 (1931); *Ashby v. State,* 124 Tenn. 684, 139 S.W. 872 (1911).

Appellant contends that the Attorney General was allowed by the Court to bring out points in closing argument which were not referred to in the argument of the defense counsel and was, therefore, not rebuttal and was outside the record. The argument of appellant's counsel is not in the record and we are unable to say that the State's closing argument was not rebuttal. See, *Sneed v. State,* 221 Tenn. 6, 423 S.W.2d 857 (1968). Nor do we find that the argument referred to was predicated on evidence not introduced during the trial of the case. The Attorney General pointed out characteristics about appellant's boots and the boots are in evidence. This is legitimate advocacy. See, *Kirkendoll v. State,* 198 Tenn. 497, 281 S.W.2d 243 (1955). There is no merit in this assignment.

The judgment of the Circuit Court of Lauderdale County is affirmed.

WALKER, P. J., and RUSSELL, J., concur.