IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 2000 SESSION

## STATE OF TENNESSEE, v. CARLOS C.  BEASLEY.

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-03607      James C. Beasley, Jr., Judge**

---

**No. W1999-00426-CCA-R3-CD - Decided May 2, 2000**

---

The appellant, Carlos C. Beasley, referred herein as "the defendant," appeals as of right from a conviction for especially aggravated robbery by a Shelby County jury.  The same jury found the defendant guilty of voluntary manslaughter, from which the defendant does not appeal.  The Shelby County Criminal Court imposed a sentence of twenty-five (25) years for especially aggravated robbery in the Department of Correction.  The defendant presents two appellate issues: 1) whether the evidence is sufficient for a rational trier of fact to find that every element of especially aggravated robbery has been proven beyond a reasonable doubt; and 2) whether the record shows that the trial court in its capacity as thirteenth (13th) juror failed to independently weigh the evidence upon consideration of the motion for a new trial.

**T.R.A.P. 3; Judgment of the Criminal Court is Affirmed.**

LAFFERTY, SR. J., delivered the opinion of the court, in which TIPTON, J., and WELLES, J., joined.

William D. Massey, Memphis, Tennessee, for the appellant, Carlos C. Beasley.

Paul G. Summers, Attorney General and Reporter, and J. Ross Dyer, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

Mrs. Mariquita Harrell, mother of the victim, testified that she saw her son, Marius Harrell, on December 4, 1997, at her home.  Her son appeared to be in good health.  She stated that the next time she saw her son was in the hospital that evening, where she saw his dead body.

Dr. O'Brian Cleary Smith, a forensic pathologist, testified that he conducted an autopsy on Marius Harrell on December 5, 1997. Dr. Smith opined that the victim died as a result of two (2) gunshot wounds.  Dr. Smith determined that one bullet passed through the victim's body, and one bullet was recovered in the upper right quadrant of the victim's abdomen.  Dr. Smith stated that the bullet was a .25 automatic caliber pistol full metal jacket.  He testified that both gunshot wounds were near contact wounds.

Officer Robert Hardy of the Memphis Police Department testified that he responded to a critical shooting call at 1096 South Lauderdale in Memphis, Tennessee. Officer Hardy observed a male lying in the front yard, who appeared to have been shot. The officer stated that he saw blood on the man's shirt, and he could hear the man trying to breathe. Officer Hardy testified that he heard gurgling sounds of liquid in the victim's throat. He asked the victim to tell him what had happened. The victim stated that Carlos Beasley shot him and gave a description of Beasley's vehicle, a white Ford. Officer Hardy learned from witnesses that the shooting took place in the house next door, located at 1102 South Lauderdale, Memphis, Tennessee.

Walter Carruthers testified that he had known the victim, Marius Harrell, for about six (6) years. The victim was renting a house from Mr. Carruthers' father. On December 4, 1997, Mr. Carruthers stated that he went to the victim's home at approximately 11:30 a.m., where he remained until approximately 4 p.m. While Mr. Carruthers was in the living room, he saw the victim count out one thousand dollars ($1,000) from money he kept in his front pockets. Mr. Carruthers left the victim's home and returned about 7 p.m. Before he entered the house, Mr. Carruthers stated that some men next door were yelling that Marius had been shot. Mr. Carruthers then saw the victim lying in front of the porch. He went to the victim, who was in pain, and noticed that the insides of his front pockets were sticking out. Mr. Carruthers could not feel any money in the victim's pocket. Carruthers admitted that he was serving two (2) sentences for aggravated robbery and denied taking any money from the victim.

Officer Cham N. Payne of the Memphis Police Crime Scene Unit testified that he went to 1102 South Lauderdale, Memphis, Tennessee, in response to a shooting. Officer Payne identified photographs from the scene depicting a shoe lying in the front door, an overturned chair in the living room, a table, a torn twenty dollar ($20) bill on the floor, a Motorola pager, a spent bullet, a penny, a chrome shell, and some leafy substance on the floor that appeared to be marijuana. A pair of wire-rimmed eyeglasses and another small bullet casing were located in the hallway. In the den area, Officer Payne found a derringer loaded with two (2) live .38 rounds underneath a sofa cushion and three .44 casings.

Lieutenant Charles Logan of the Memphis Homicide Bureau testified that on December 4, 1997, he attempted to locate the defendant, but was unsuccessful.

Sergeant James L. Fitzpatrick of the Memphis Homicide Bureau testified that on January 14, 1998, he met with Tameka Beasley, the defendant's sister. She surrendered a Ruger .44 magnum super Red Hawk revolver that had been taken from the victim.

Lieutenant Sammy Harold Ballard of the Memphis Homicide Bureau testified that he interviewed the defendant on December 27, 1997. Lieutenant Ballard advised the defendant of his rights by the use of a waiver form. The defendant signed the form agreeing to give a statement, which was read to the jury. In the statement, the defendant admitted shooting Marius Harrell with a .25 caliber automatic pistol. The victim was armed with a .44 magnum that was chrome with a black handle. The defendant stated that he went to 1102 South Lauderdale to deliver some marijuana

to Marius. The defendant had a half pound of marijuana in his possession, but he was going to deliver only a quarter pound to the victim for two hundred fifty dollars ($250).

The defendant stated that he drove to the victim's home in a white Ford Escort and subsequently shot Marius Harrell, because the victim tried to rob him with the .44 magnum. The defendant stated that he put the marijuana on the table, and the two men haggled over the price. He further stated that when the victim pulled a .44 magnum, he grabbed the victim's arm, and they both fell to the floor. The defendant pulled his gun to get the victim off of him and fired the weapon. The defendant stated he got up, dizzy from the struggle, and ran. During the struggle, the defendant's glasses were knocked off, and he left his glasses and a beeper at the house.

Tameka Beasley, sister of the defendant, testified that the police were looking for her brother. Prior to the incident, she stated that her brother told her he was going to sell some marijuana to someone. Ms. Beasley testified that she later gave a .44 magnum gun to Detective Fitzpatrick.

On his own behalf, the defendant testified that he knew the victim. He and the victim had served time together, and he had sold the victim some marijuana on a couple of occasions. Also, the defendant testified that he had sold marijuana to Mr. Carruthers. The defendant stated that he saw the victim twice on December 4, 1997. The first time was at 6 p.m., when he told the victim that he had two (2) pounds of marijuana. The second time was when he returned to the victim's home with a half pound of marijuana. The defendant told the victim that he wanted two hundred fifty dollars ($250) for the marijuana. The defendant stated that he had the marijuana in a tote bag, but that he put the .25 pistol in his pocket for his own safety. The defendant testified that he put the marijuana on the table in the living room and told the victim that he wanted two hundred fifty dollars ($250) for it. The victim said that he would give the defendant two hundred dollars ($200). Suddenly, the victim pointed a .44 magnum at the defendant. The defendant stated that he jumped up and grabbed the barrel of the weapon, and the two men fell to the floor fighting. During the scuffle, the victim knocked the defendant's glasses off his face, and the defendant, in reaction and fear for his life, pulled his .25 pistol and shot the victim twice. The defendant testified that he had no intention of shooting the victim or of robbing him. The defendant stated that the victim never showed him any money. The victim was still alive, and the defendant did not want to kill him but only wanted to disarm him. The defendant stated that he panicked and left with the victim's .44 magnum. The defendant admitted that he had a previous conviction of attempted aggravated robbery in which a person had been shot.

# LEGAL ANALYSIS
## SUFFICIENCY OF EVIDENCE

The defendant asserts that the proof adduced at trial is totally insufficient to establish that the defendant is guilty of especially aggravated robbery involving the taking of any money from the victim. The State would argue otherwise.

Following a jury conviction, the initial presumption of innocence is removed from the defendant and exchanged for one of guilt, so that, on appeal, the defendant had the burden of demonstrating the insufficiency of the evidence. *State v. Tuggle,* 639 S.W.2d 913, 914 (Tenn. 1982). It is the duty of this Court to affirm the conviction unless the evidence adduced at trial was so deficient that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U. S. 307, 317, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes,* 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13(e). In *State v. Matthews,* 805 S.W.2d 776 (Tenn. Crim. App.), *perm. app. denied*, (Tenn. 1990), this Court held this rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct evidence and circumstantial evidence. *Id.* at 779.

This Court does not reweigh or reevaluate the evidence, nor may we replace our inferences for those drawn by the trier of fact. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn. 1978). Furthermore, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris,* 839 S.W.2d 54, 75 (Tenn. 1992), *cert. denied,* 507 U.S. 954, 113 S. Ct. 1368 (1993). A jury verdict accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State's theory. *State v. Williams,* 657 S.W.2d 405, 410 (Tenn. 1983).

The defendant quotes the court in *State v. Crawford,* 470 S.W.2d 610, 613 (Tenn. 1971), asserting that he is entitled to a reversal of the offense of especially aggravated robbery, because the State has failed to establish "[a] web of guilt" woven "around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Further, the defendant asserts that there is no proof that he intended to deprive the victim of his money or even the firearm that was taken. The firearm was taken only to avoid being shot or robbed himself.

The indictment of especially aggravated robbery in this cause alleges that the defendant did knowingly and violently, by the use of a deadly weapon, obtain from the victim, Marius D. Harrell, a sum of money and a firearm over the value of five hundred dollars ($500) and cause serious bodily injury to the said Marius Harrell.

Tennessee Code Annotated § 39-13-403 defines especially aggravated robbery as:

> (a) Especially aggravated robbery is robbery as defined in § 39-13-401: (1) Accomplished with a deadly weapon; and (2) Where the victim suffers serious bodily injury.

-4-

Tennessee Code Annotated §39-13-401 states that:

> (a) Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear.

Theft of property requires that the accused, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103.

Circumstantial evidence may be used exclusively or in combination with direct evidence to establish guilt of criminal conduct. *State v. Smith,* 868 S.W.2d 561, 569 (Tenn. 1993). The one element necessary in almost all criminal offenses, which is most often proven by circumstantial evidence, is that relating to the accused's culpable mental state. *Hall v. State,* 490 S.W.2d 495, 496 (Tenn. 1973). Other than an accused stating what his or her purpose, intent, or thinking was at the relevant times, the trier of fact is left to determine the mental state by making inferences from the surrounding circumstances it finds to exist. *See, e.g., Poag v. State,* 567 S.W.2d 775, 778 (Tenn. Crim. App. 1978). Furthermore, the jury is not obligated to accept the defendant's explanation of the events. The weight to be given circumstantial evidence is for the jury to determine. *Williams v. State,* 552 S.W.2d 772, 776 (Tenn. Crim. App. 1977); *State v. McMahan,* No. 03C01-9707-CR-00262, 1999 WL 177590, at *6 (Tenn. Crim. App. Mar. 31, 1999).

The facts in this case present a classic illustration in which a jury must determine if the State has proven to its satisfaction, beyond a reasonable doubt, that the defendant took the victim's money. From our review of the facts, we believe that the evidence supports the jury's verdict. Mr. Carruthers, with all his warts, testified that the victim had one thousand dollars ($1,000) in his front pocket. The defendant went to the victim's home to sell marijuana for cash. Although the defendant testified that he did not see any money, the jury evidently believed otherwise. When Mr. Carruthers checked the victim's pockets, they were turned inside out and empty. The defendant admitted taking a firearm from the victim, although he claimed it was for his own self-defense, and he had no intention of stealing the .44 magnum. The jury had all the facts in front of it as to which players had access to the victim and the missing money. The jury concluded that the defendant not only took the money, but most certainly took the firearm to deprive the victim of his property. The jury resolved the credibility of the witnesses in favor of the State; therefore, we see no reason to disturb their verdict. There is no merit to this issue.

# THIRTEENTH (13TH) JUROR

The defendant asserts that the trial court, acting as the thirteenth (13th) juror, failed to engage in an independent weighing of the evidence as to especially aggravated robbery. The State argues that the record does not support this assertion.

Rule 33(f), Tennessee Rules of Criminal Procedure provides:

> The trial court may grant a new trial following a verdict of guilty if it disagrees with the jury about the weight of the evidence. If the trial court grants a new trial because the verdict is contrary to the weight of the evidence, upon request of either party the new trial shall be conducted by a different judge.

This rule is predicated upon an allegation of error in a motion for a new trial that the trial court failed to satisfactorily weigh the evidence as to the jury's finding of guilt. In *State v. Carter,* 896 S.W.2d 119, 120 (Tenn. 1995), our Supreme Court held that a trial court's duty to act as thirteenth juror is mandatory pursuant to Rule 33(f). Also, the Supreme Court determined that where the trial court denies a motion for a new trial, an appellate court may presume, in the absence of evidence to the contrary, that the trial court approved the jury's verdict as the thirteenth juror, without an explicit statement by the judge on the record that he has done so. *Id.* If the trial court is dissatisfied with the verdict of the jury, it is his or her duty to set aside the verdict and grant a new trial. If it appears to this Court, from statements made by the trial court in passing upon the motion for a new trial, that he was not really satisfied with the verdict, it would be this Court's duty to grant a new trial. *State v. Dale Nolan,* No. 01C01-9511-CC-00387, 1997 WL 351142, at *15 (Tenn. Crim. App. June 26, 1997) (citing *Cumberland Tel. & Tel. Co. v. Smithwick,* 112 Tenn. 463, 467-68, 79 S.W. 803, 804 (1904), *perm. app. denied*, (Tenn. 1998)).

At the hearing for a motion for a new trial, the trial court stated:

> As to the especially aggravated robbery, again, I think there's circumstantial evidence that the jury can consider that Mr. Beasley stole the one thousand dollars. And I also think that there's evidence -- sufficient evidence that a jury could determine that the pistol was the proceeds of the robbery.
>
> And -- I mean, asked to explain why, I don't think we ever are able to get inside the head of individuals that commit crimes to go into why. There was a lot about this that didn't make a lot of sense. But then again, somebody that sells drugs and the world that we live in today that chooses to go armed and sell drugs, they don't think like I think I think anyway. So for me to try to explain why somebody did something under those circumstances, I don't think I'll ever be able to do that.

But I think the issue before me is, was there sufficient evidence. And I think that there was sufficient evidence. I think there was evidence that a jury could look at and see that the money was missing and the gun was missing. And I think a jury could determine that this was taken by force and violence and that the victim suffered serious bodily injury. Those are the elements of especially aggravated robbery.

And again, my job and my role is to determine was there that type of evidence available and could a rational and reasonable jury return a verdict such as that based on the evidence that was presented. And I find that they could.

\* \* \* \*

Again, acting as 13th juror in the especially aggravated robbery, I find that there was sufficient evidence to sustain that verdict and also that a reasonable jury could return a verdict based on the evidence that was presented and the law that was presented; and I don't see any basis for me overturning that.

Upon consideration of the entire statement of the trial court at the hearing on the motion for a new trial, we are of the opinion that the trial judge weighed the evidence and concurred with the jury's verdict, thereby fulfilling his role as thirteenth (13th) juror. There is no merit to this issue.

The trial court's judgment is affirmed.